## OTTO S. JOHNSON v. HARTFORD ACCIDENT & INDEMNITY COMPANY.[1]

October 21, 1932.

No. 28,989.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Jansen,* for appellant.

*L. W. Crawhall,* for respondent.

WILSON, C. J.

Defendant appealed from a judgment.

Plaintiff was a subcontractor to do the plain and ornamental plastering in the construction of the Northwestern National Bank building in Minneapolis. This work aggregated about $146,000.

[1] Reported in 245 N. W. 27.

Defendant signed plaintiff's bond as surety for the performance of his contract. He was unable to carry on, and defendant took over the work. This was done under a written contract between the parties hereto, wherein it was agreed that plaintiff should coöperate and if any profit resulted it would be paid to plaintiff, but defendant was to be protected from loss and reimbursed for all expenses, "including attorneys' fees."

Defendant engaged Mr. W. E. G. Watson, an attorney, to act as such and also to act in a nonprofessional capacity as general manager of the job. During the prosecution of the work Mr. Watson received and paid out all moneys. He had a bookkeeper and other help. Plaintiff had full knowledge of Mr. Watson's employment and work. When the job was completed there remained on hand as a profit $9,432.11 exclusive of compensation to be paid to Watson, who withheld $2,030 thereof to apply on his compensation. Plaintiff by this action seeks to recover the $9,432.11. Defendant answering says it makes no claim to the money, but that Mr. Watson has not been paid and that he has retained $2,030 and has billed defendant for $4,388.76 more as his compensation. It pleads that it is ready, willing, and able to pay the money in its hands into court to be distributed as the court may direct. In the reply the plaintiff claims that the demands of Watson are unreasonable and excessive and that he should not be paid over $600.

After issue was framed, defendant, upon the record and an affidavit, moved the court for an order permitting it so to deposit the money in court. The motion papers stated the unpaid claim of Watson, that Watson and plaintiff could not agree on the amount to be paid to Watson, and that defendant could not without hazard to itself pay the outstanding demands of either plaintiff or Watson. This was also pleaded in the answer. The motion was denied. Of course defendant offered so to deposit only $7,432.11. This makes some complications.

When the case was called for trial defendant again moved the court for an order bringing Watson into court as an additional party defendant and that the case be continued therefor. This motion was also denied.

The case went to trial, and the jury apparently fixed Watson's compensation at $1,300. Some other jury may fix a different amount as between defendant and Watson.

As between plaintiff and defendant, the latter had the right to have the reasonable compensation earned by Watson paid from the money in defendant's hands. Of course Watson had no direct claim upon this particular fund. Defendant owed him on a direct employment.

Plaintiff was under contractual obligation to do the work to which Watson contributed. He had consented to the general plan. He knew that Watson had been employed and had to be paid. Watson indirectly and in a measure was doing the work for plaintiff, though he had not contracted with plaintiff. Plaintiff and Watson could not agree upon the amount to be paid.

Defendant's answer and its motions disclosed to plaintiff, as he presumably already knew, and to the court, that defendant was being subjected to a hazardous position. Before the action was started, defendant could not yield to the demand of either party without having to take the chance of being answerable in dollars to the other to its unrecoverable loss. Considering itself practically a mere stakeholder, it attempted to bring Watson into the case so that a determination of the amount to be paid to him would be binding upon all the parties. Indirectly, as stated above, plaintiff was the one to pay him. Subsequent events emphasize defendant's predicament. If this judgment should stand, it would seem that defendant must defend an action from Watson, who may recover a verdict for a substantial amount. If defendant should suffer the threatened loss, and it is highly probable that it would, it would have no remedy. Plaintiff could not in good conscience oppose the motions. It would have been no hardship on plaintiff if Watson had been made a party, plaintiff not suffering a delay because of his opposition.

It is said, and perhaps correctly, that G. S. 1923 (2 Mason, 1927) § 9181, is not applicable to the record and facts in this case and that the order is a discretionary one involving no abuse of discretion. But regardless of the statute, the court has inherent power

to bring a party into a case whenever it is necessary to the complete administration of justice. Webster v. Beckman, 162 Minn. 132, 202 N. W. 482. This is such a case. In our opinion, it was not just to defendant to refuse its request in this case. Defendant's situation was not the result of bad acting on its part, nor could the situation have been readily anticipated. The results were unfortunate. Controversy arose. Defendant was entitled to look to the court for protection against the apparent loss, which did not belong to it. It was not a necessary loss for anyone. It was one which the court could readily and easily avoid. It is the duty of anyone to avoid unnecessary loss. If the consequences of this litigation should stand, they would reflect upon the administration of justice. Such a result comes only from an erroneous administration of the rules of law, which do not contemplate that a litigant should find himself in the unenviable position of defendant. From the standpoint of the public and aside from personal loss, it means two lawsuits instead of one. The mind, even of a layman, would rebel if the law permitted or approved a substantial loss to one in defendant's situation.

The order rested in the discretion of the trial court; but when a party loses his right by the denial of such a motion, it is an abuse of discretion. In other words, when the court denies such a motion and an injury will result which the court ought to prevent, it is an abuse of discretion. Minneapolis E. L. Co. v. Federal Holding Co. 161 Minn. 198, 201 N. W. 324. The record is an equivalent of depriving defendant of a legal right, since it takes from it that protection to which it was in contemplation of law entitled. The relative convenience and inconvenience preponderates strongly in favor of defendant. When the subject matter is of such importance to the moving party and cannot harm the adversary, judicial discretion calls for affirmative action. We are of the opinion that the refusal to grant defendant's motion for an additional party defendant was an abuse of discretion.

The judgment is reversed.